**UNITED STATES DISTRICT COURT**

**DISTRICT OF CONNECTICUT**

DANIEL CYR,
     **- Plaintiff,**

     v.                              CIVIL NO. 3:10-cv-1032 (CFD)(TPS)

MICHAEL J. ASTRUE,
COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,
     **- Defendant.**

**MAGISTRATE JUDGE'S OPINION**

I.   **Introduction**

The plaintiff, Daniel Cyr, brings this action pursuant to Section 205(g) of the Social Security Act ("SSA"). See 42 U.S.C. § 405(g). He seeks review of a final decision by the defendant, the Commissioner of Social Security ("Commissioner"), denying his Title II application for Disability Insurance Benefits ("DIB") and his Title XVI application for Supplemental Security Income ("SSI"). Arguing that the Administrative Law Judge ("ALJ") committed approximately fifteen errors in his decision to deny benefits, plaintiff moves for an order reversing the Commissioner's ruling or, in the alternative, remanding the case for a new administrative hearing in order to rectify those errors. (Dkt. #15.) The Commissioner opposes plaintiff's motion and moves for an order affirming his decision. (Dkt. #18.) For the reasons set forth below, plaintiff's motion to reverse and remand should be **GRANTED** and the Commissioner's motion to affirm should be **DENIED**. 28 U.S.C. § 636(b).

## II.  Background of the Case

### A.  Administrative History

On November 19, 2007, plaintiff applied for DIB and SSI under Titles II and XVI of the SSA, respectively.  (R. at 117, 124.) Plaintiff alleges an onset date of November 12, 2007.  (R. at 24.) Plaintiff claims that he is disabled due to several heart diseases and ailments.  Pl.'s Mem. 5-7.  On February 28, 2008, the Commissioner denied plaintiff's application for benefits.  (R. at 48-49.)  On April 17, 2008, plaintiff filed his request for reconsideration.  (R. at 60.)  On June 24, 2008, after having a physician and a disability specialist review plaintiff's claim for benefits, the Social Security administration denied plaintiff's request for reconsideration.  (R. at 50-51, 63-68.)  On July 25, 2008, plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (R. at 69.)  On August 10, 2009, ALJ Bruce H. Zwecker held a hearing that consisted solely of testimony by plaintiff, who was represented by attorney Adam Janeczyk.  (R. at 23-24.)  A vocational expert ("VE"), Hank Lerner, was present but did not testify.  (R. at 24; Pl.'s Mem. 9.)  The ALJ also sent interrogatories to another VE, Renee Jubrey, as well as to a medical expert ("ME"), Dr. Joseph R. Gaeta.  (R. at 22, 44-45, 376-78.)  On January 25, 2010, the ALJ issued a decision in which he concluded that plaintiff is not disabled.  (R. at 7-17.)  The Decision Review Board ("DRB") selected plaintiff's claim for

review.  (R. at 4.)  However, since the DRB did not complete its review of plaintiff's claim within the prescribed ninety-day review period, the ALJ's unfavorable decision became final on May 4, 2010. (R. at 1-3.)  On June 30, 2010, plaintiff filed his complaint in the instant case.  See Pl.'s Compl. 1, ECF No. 1.

**B.   Legal Standard**

The ALJ must apply a five-step sequential evaluation process to each application for disability benefits.  See 20 C.F.R. §§ 404.1520, 416.920.  First, the ALJ determines whether the claimant is employed.  If the claimant is unemployed, the ALJ proceeds to the second step to determine whether the claimant has a severe impairment that prevents him from working.  If the claimant has a severe impairment, the ALJ proceeds to the third step to determine whether the impairment meets or equals an impairment listed in 20 C.F.R. pt. 404, subpt. P, App. 1.  If the claimant's impairment meets or equals a listed impairment, the claimant is disabled.

If the claimant does not have a listed impairment, however, the ALJ proceeds to the fourth step to determine whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work.  If the claimant cannot perform his past relevant work, the ALJ proceeds to the fifth step to determine whether the claimant can perform any other work available in the national economy in light of the claimant's RFC, age, education, and work experience.  The claimant is entitled to disability

3

benefits only if he is unable to perform other such work.

The claimant bears the burden of proof as to the first four steps, while the Commissioner bears the burden of proof as to the fifth step.  Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008).  "A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error . . . .  Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Burgess v. Astrue, 537 F.3d 117, 127 (2d Cir. 2008).  As long as there is substantial support for the decision in the record, any evidence in the record which could have supported a different conclusion does not undermine the Commissioner's decision.  Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990).

## III. Legal Discussion

The court assumes the parties' familiarity with the ALJ's decision and the factual background of this case.  The court also notes that in his memorandum of law, the Commissioner clarified certain facts that were discussed in the ALJ's decision and plaintiff's own memorandum of law, see Def.'s Mem. 2, and that plaintiff did not object thereto.  The court will now address each of plaintiff's legal arguments, and the Commissioner's responses thereto, in turn.

4

A.   **Whether The ALJ Erred By Failing To Obtain And Review All Relevant Evidence**

An ALJ generally has an affirmative obligation to develop the administrative record.  See Melville v. Apfel, 198 F.3d 45, 51 (2d Cir. 1999).  SSA regulations dictate that the ALJ:

> ". . . shall inquire fully into the matters at issue and shall receive in evidence the testimony of witnesses and any documents which are relevant and material to such matters.  If the [ALJ] believes that there is relevant and material evidence available which has not been presented at the hearing, he may adjourn the hearing or, at any time, prior to the filing of the compensation order, reopen the hearing for the receipt of such evidence."

20 C.F.R. § 702.338 (2011).  Moreover, the Second Circuit has held that an ALJ, "unlike a judge in a trial, must herself affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding.  This duty arises from the Commissioner's regulatory obligations to develop a complete medical record before making a disability determination and exists even where, as here, the claimant is represented by counsel." Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996)(citing Echevarria v. Sec'y of Health & Human Servs., 685 F.2d 751, 755 (2d Cir. 1982) and Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996))(internal quotation marks omitted).

Plaintiff argues that the ALJ failed to obtain, review, or add to the record several pieces of evidence that were relevant and available to him, including some documents and records that were "apparently in Defendant's possession when [plaintiff's] claim was

decided   at   the   initial   administrative   level   and   at   the reconsideration level."   Pl.'s Mem. 13.   Moreover, plaintiff asserts that the ALJ failed to obtain more information about plaintiff's condition either by contacting plaintiff's treating physician ("TP") or by scheduling a consultative cardiological examination.   Id. at 13-14.   In particular, plaintiff highlights five "missing" pieces of evidence that the ALJ should have obtained: (1) records that Disability Determination Services ("DDS")   collected   and   reviewed   but   are   absent   from   the administrative record; (2) legible copies of Dr. Diaz's office notes; (3) clarification regarding the conflict of opinion between Dr.   Diaz   and   Dr.   Gaeta;   (4)   a   consultative   cardiological examination   of   plaintiff;   and   (5)   a   supplemental   hearing   to reconcile the conflict between the Vocational Expert's ("VE") testimony and the Dictionary of Occupational Titles ("DOT").   See generally, Pl.'s Mem. 14-18.

With respect to the DDS records, plaintiff claims the report from Dr. Joseph P. Sappington that DDS reviewed and relied upon in reaching its decision to deny plaintiff's application for benefits is missing from the record.  (Pl.'s Mem. 15; R. at 52.)  Plaintiff infers that the ALJ did not review Dr. Sappington's report precisely because it is not in the record.  Plaintiff argues that this omission is significant because the ALJ is required to give significant weight to the opinions of state agency physicians who

6

review the claimant's medical records.   See SSR 96-6p, 1996 WL
374180 (July 2, 1996)(". . .the opinions of State agency medical
and psychological consultants . . . can be given weight only
insofar as they are supported by evidence in the case record . .
."). Indeed, the ALJ gave significant weight to the state agency
medical consultant's findings and conclusions (R. at 14) but
plaintiff asserts that this was improper because the ALJ must
review all of the available medical evidence, including and
especially the medical records evaluated by the state agency
physicians. Likewise, the court must be able to review those
records to determine whether the ALJ's findings are supported by
substantial evidence. In short, plaintiff argues the ALJ erred by
accepting DDS findings that were based, in part, on a report that
is absent from the record.

In response, the Commissioner argues that Dr. Sappington's
signature only appears on a "handful of treatment notes and lab
results." Def.'s Mem. 15. The Commissioner notes that the report
DDS received is "not an RFC opinion, but the treatment notes or
reports signed by Dr. Sappington." Essentially, the Commissioner
appears to argue that since Dr. Sappington did not provide an
opinion regarding plaintiff's RFC, plaintiff's fear that the ALJ
based his decision on missing evidence is unfounded.

The court rejects the Commissioner's argument. Simply
declaring that "the report received is not an RFC opinion, but

[rather] the treatment notes or reports signed by Dr. Sappington"
does not make it so.  Without access to this evidence, there is no
way for plaintiff or the court to verify whether Dr. Sappington's
report concerns plaintiff's RFC.  The ALJ should have been able to
review Dr. Sappington's report, especially since he is named
throughout the record as plaintiff's "cardiologist" and "attending
MD."  (R. at 263, 322.)  For this reason, **REMAND** is necessary so
that Dr. Sappington's report can be added to the administrative
record and reviewed by the ALJ and plaintiff.

Next, plaintiff reiterates the ALJ's concern during the
hearing that it is "nearly impossible to read the office notes and
records of Dr. Diaz, Mr. Cyr's Treating Physician."  (Pl.'s Mem.
16, R. at 43-45.)  The following is a list of the comments the ALJ
made during the hearing with respect to the legibility of Dr.
Diaz's office notes:

1.   ". . . it's also a little bit difficult to read his
     treatment notes."  (R. at 43.)

2.   ". . . "I'm inclined almost to either, to write the
     Dr. Dias [*sic*] or maybe to schedule a consultative
     examination.  It's just the state of the record.
     It's hard to read his notes and what have you and
     --"  (R. at 44-45.)

3.   "It'll be larger, I'm not sure I'd still be able to
     read it though.  All right.  Let me, let me just
     take it under advisement after the hearing and I'll
     see whether I can make heads or tails out of his
     records, whether we need either clarification from
     him or a consultative examination . . . ."  (R. at
     45.)

Plaintiff points out that the ALJ did not request more information

from Dr. Diaz, such as a typed copy of his obviously sloppy office notes.

In response, the Commissioner states that the regulations merely require the ALJ to make an initial request for evidence from a medical source and then make a follow-up request if the evidence is not received. See 20 C.F.R. §§ 404.1512(d)(1); 416.912(d)(1). Furthermore, the Commissioner claims that Dr. Diaz's notes are difficult, but not impossible, to read. He supports this proposition by pointing out how the ALJ referenced the notes in his opinion, thereby indicating that he was able to decipher them. The Commissioner also points out that during the hearing, the ALJ announced that he would seek clarification from Dr. Diaz if he found himself unable to decipher the notes. The fact that he never sought clarification suggests that he was able to understand the notes.

Once again, the court rejects the Commissioner's argument. Dr. Diaz's notes are incredibly difficult to read. See generally, Exhibits 6F and 11F, R. at 295-324, 353-375. The Commissioner concedes that Dr. Diaz was plaintiff's treating physician. The office notes of a treating physician are indisputably crucial to the disability determination process. When an ALJ makes three separate comments during a disability hearing regarding the illegibility of a treating physician's handwriting, and twice wonders aloud whether he will request a consultative examination or

a clarification, justice requires that the ALJ obtain a typed copy of the handwritten notes.  The fact that the ALJ referred to Dr. Diaz's notes in his written decision does not prove that the ALJ was able to successfully decipher every page and every word of Dr. Diaz's records.  It is quite conceivable, given the ALJ's comments at the hearing, that he was unable to understand a critical portion of Dr. Diaz's office notes.  In light of the fact that the ALJ never stated that he was unquestionably able to overcome his earlier struggles in deciphering Dr. Diaz's notes, the court refuses to accept the inference that the Commissioner suggests.  On **REMAND**, the ALJ will obtain a typed copy of Dr. Diaz's office notes so that he can examine, without question and without difficulty, all of the records pertaining to the claimant.

Next, plaintiff argues that the ALJ should have attempted to reconcile the conflict between Dr. Diaz and Dr. Gaeta by asking Dr. Diaz to clarify his statements.  Pl.'s Mem. 16.  Plaintiff claims that "the ALJ is required to contact the TP in situations like this."  To support this contention, plaintiff cites Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999)(internal citations and quotation marks omitted), which holds that "an ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record. . . . In fact, where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history even when the

claimant is represented by counsel or . . . ."

However, as the Commissioner suggests, there are no apparent gaps or deficiencies in the administrative record.  Plaintiff does not point to some aspect of Dr. Diaz's evidence that must be developed further.  Rather, plaintiff points to the ALJ's failure "to obtain further information to resolve the conflict between Dr. Diaz's opinions and those of th[e] ME."  Pl.'s Mem. 16.  Since the ALJ, as the trier of fact, has the duty of resolving any conflicts between sources of medical evidence, see Richardson v. Perales, 402 U.S. 389, 399 (1971), it is not clear that the ALJ has committed an error here.

Next, plaintiff claims that the ALJ erred by failing to arrange a consultative examination of the claimant.  Pl.'s Mem. 17-18.  He asserts that a consultative examination by a board-certified cardiologist would have been helpful because heart disease is his only claimed impairment and because neither the ME nor the DDS doctors are board-certified in cardiology.  Id. at 18.  In response, the Commissioner argues that the ALJ was not obligated to arrange a consultative examination where the record was complete.  The court agrees.  The regulations dictate that a consultative examination may be arranged if the claimant's medical sources cannot or will not provide sufficient medical evidence for the Commissioner to determine whether the claimant is disabled.  20 C.F.R. §§ 404.1517, 416.917.  Situations requiring a consultative

11

examination include, but are not limited to: (1) when the evidence as a whole is insufficient to support a decision on the claim; (2) when the required additional evidence is not contained in the records of the claimant's medical sources; (3) when the evidence that may have been available from treating physicians or other medical sources cannot be obtained for reasons out of the claimant's control; (4) when the required additional evidence is highly technical or specialized and is unavailable from treating physicians or other medical sources; and (5) when there is a conflict, inconsistency, ambiguity, or insufficiency in the evidence that must be resolved and cannot be resolved by recontacting the claimant's medical sources.   20 C.F.R. §§ 404.1519a, 416.919a.

None of these situations exists here.  Plaintiff merely claims that it would be "helpful" for a board-certified cardiologist to examine his heart condition.  Plaintiff accurately states that neither his treating physician nor his other medical sources are board-certified cardiologists, but fails to show how that fact gives rise to any of the situations described above.   As the Commissioner points out, there is no requirement that a medical source possess the exact specialization or certification relating to the alleged disability of the claimant.   Consequently, plaintiff's argument is without merit.

Lastly, plaintiff claims that the ALJ erred by failing to

arrange a supplemental hearing to resolve the conflict between the second VE, Renee Jubrey, and the DOT and its companion publication, Selected Characteristics of Occupations ("SCO").  Pl.'s Mem. 18. In her answers to the ALJ's interrogatories, Jubrey stated that a hypothetical individual (presumably possessing plaintiff's physical capabilities) who can only stand or walk for two hours during an eight-hour workday could perform three assembly positions that are listed in the DOT as light work.  (R. at 205-06.)  According to the DOT, "light work" jobs require individuals to stand for more than two hours in an eight-hour workday, but Jubrey found that these three assembly jobs are performed "from a seated position."  Id. Plaintiff argues that a supplemental hearing is necessary to resolve this conflict.

The Commissioner and the ALJ agree that Jubrey provided a "reasonable explanation" for the discrepancy.  (R. at 16; Def.'s Mem. 17-18.)  Although these three assembly jobs are classified as "light work" under the DOT, they are normally performed from a seated position and do not require the individual to stand for more than two hours during an eight-hour workday.  Jubrey based this conclusion on her professional knowledge and experience, neither of which plaintiff has attacked as deficient.  Although the court is satisfied with Jubrey's response, it appears that the plaintiff is unhappy with its basis and specificity.  Accordingly, and because Section I-2-5-30 of the Hearings, Appeals, and Litigation Law

Manual ("HALLEX") gives plaintiff "the right to request a supplemental hearing" in this scenario, plaintiff shall have the opportunity on **REMAND** to arrange a supplemental hearing and pose additional questions to the VE regarding the conflict.

### B. Whether The ALJ Erred By Committing Factual Errors In His Evaluation Of The Evidence

Plaintiff claims that the ALJ erred by misconstruing, mischaracterizing, or altogether ignoring multiple pieces of evidence. <u>See</u> <u>generally</u>, Pl.'s Mem. 18-21. Plaintiff cites <u>Hankerson v. Harris</u>, 636 F.2d 893 (2d Cir. 1983), for the proposition that this court must be satisfied that plaintiff has had a "full hearing under the Secretary's regulations and in accordance with the beneficent purposes of the Act." It must be noted that the <u>Hankerson</u> court derived the aforementioned standard from <u>Gold v. Sec'y of Health, Education & Welfare</u>, 463 F.2d 38, 43 (2d Cir. 1972), in which the Second Circuit ruled that a claimant did not receive a "full hearing under the Secretary's regulations in accordance with the beneficent purposes of the Act" after the examiner, <u>inter</u> <u>alia</u>, failed to inform her that she needed to and should obtain counsel, that she needed to and should call witnesses, and failed to properly advise her throughout the hearing because "he considered her case unpersuasive." As a result, the <u>Gold</u> court found "serious uncertainties or gaps in the record" that neither plaintiff nor the Commissioner allege are present in this case.

14

However, plaintiff does object to nine separate errors by the ALJ.  First, the ALJ only listed "coronary artery disease" as plaintiff's severe impairment.  (Pl.'s Mem. 18; R. at 9.) Plaintiff asserts that he also suffers from "Ischemic Cardiomyopathy" and "Peripheral Vascular Disease with Claudication" and argues that the ALJ should have evaluated all of his impairments.  In response, the Commissioner argues that plaintiff did not present evidence of his symptoms resulting from these two conditions.  In fact, the diagnoses appear only once in the record and are "part and parcel" of plaintiff's overall cardiovascular impairment, which the ALJ considered and discussed within his decision.  Def.'s Mem. 4.  The Commissioner also points out how Dr. Anita Bennett, a state agency physician and expert in Social Security disability evaluation, see 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i), found only a single diagnosis: ischemic cardiomyopathy.  (R. at 287-294.)  This conclusion represents substantial evidence of a single severe impairment on which the ALJ reasonably relied.

Second, the ALJ only addressed the first of two stress tests that plaintiff underwent.  Pl.'s Mem. 19.  The ALJ noted plaintiff's exercise stress test on October 16, 2007, which revealed "negative findings" for exercised-induced myocardial ischemic response, chest pain, and angina, as well as moderate exertional dyspnea and fatigue with an exercise workload of 10.8

METS.  (R. at 10.)  Plaintiff asserts that he underwent a second
stress test that was positive for ischemia.  Pl.'s Mem. 19.  In
response, the Commissioner points out that the second stress test
revealed *reversible* ischemia.   (Def.'s Mem. 4; R. at 255.)
Moreover, this stress test was performed on October 23, 2007, prior
to plaintiff's alleged onset date of November 12, 2007.  (R. at
255.)   Consequently, substantial evidence supports the ALJ's
decision not to treat plaintiff's diagnosis of reversible ischemia
as a severe impairment.

Third, plaintiff asserts that in his decision, the ALJ
understated the extent of the blood vessel blockage from which he
suffers.  Pl.'s Mem. 19.  He claims that he has five completely
blocked vessels and another that is 90% blocked, whereas the ALJ
noted only two fully blocked vessels and a third that is partially
blocked.  The defendant correctly points out, however, that the ALJ
cited to Exhibit 2F, in which Dr. Sappington reported the diffuse
nature of plaintiff's heart disease and specifically mentioned five
vessels with 100% lesion and one with 90% lesion.  (R. at 10, 267.)
There is no evidence, therefore, that the ALJ failed to consider
all of plaintiff's blockages.  Rather, it is clear that the ALJ
evaluated and cited to reports of plaintiff's diffuse disease
throughout the record.  As a result, substantial evidence supports
the ALJ's incorporation of plaintiff's blockages into his decision.

Fourth, plaintiff objects to the ALJ's statement that "[n]o

16

treating physician has reported findings which would satisfy Listing 4.04 or any other relevant cardiovascular listing." (Pl.'s Mem. 19; R. at 10.)  Specifically, plaintiff refers to Dr. Diaz's diagnosis of six blocked vessels and marked limitations in physical activity demonstrated by fatigue, chest pain, dyspnea on minimal exertion, and leg numbness, weakness, and pain.  Pl.'s Mem. 19. However, there is substantial evidence throughout the record which shows that plaintiff does not meet Listing 4.04.  That section requires that the claimant suffer from coronary artery disease that "result[s] in very serious limitations in the ability to independently initiate, sustain, or complete activities of daily living."  20 C.F.R. pt. 404, subpt. P, App. 1, § 4.04(C)(2). Plaintiff's treating physician, Dr. Diaz, reported that plaintiff can "walk a block at a reasonable pace on rough or uneven surfaces," "use standard public transportation," "prepare a simple meal and feed himself," "care for personal hygiene," and "sort, handle, or use paper/files."  (R. at 384.)  That report is substantial evidence that plaintiff is not very seriously limited in his ability to independently initiate, sustain, or complete activities of daily living.  Consequently, substantial evidence supports the ALJ's conclusion that plaintiff does not suffer from a listed impairment.

Plaintiff's next five complaints address factual inaccuracies that the ALJ allegedly made in his decision.  Plaintiff asserts

that his symptoms following his November 2007 cardiac catheterization were more extreme than the ALJ described in his opinion. Pl.'s Mem. 19-20. Plaintiff cites to multiple places throughout the record as evidence of chest pain, shortness of breath at rest, shortness of breath or dyspnea with slight activity, presyncope and dizziness from exertion, weakness, tiredness, stress, decreased pulse, headaches, muscle aches, numbness, tingling, and pain of the legs, arms, hands, and fingers. Id. Plaintiff also refutes the ALJ's claim that he was tolerating his medications, that he has no chest pain, that he has only occasional dyspnea, and that Dr. Diaz provided only "minimal medical findings in his own treatment notes." Id. Rather, plaintiff claims that his medications cause mental confusion, loss of memory, impaired concentration and headaches, that he continues to have chest pain with minimal activity, even at rest, and that he suffers from dyspnea with slight activity, even at rest. Id.

But, as the Commissioner points out, the record contains conflicting evidence. On January 11, 2008, Dr. Diaz noted that plaintiff was tolerating his medications, had no chest pain, and suffered only moderate dyspnea with certain heavy activities. (R. at 297.) On November 12, 2008, Dr. Diaz reported that plaintiff had occasional chest discomfort and dyspnea. (R. at 355.) On February 12, 2009, plaintiff reported chest discomfort and dyspnea upon "moderate" exertion. (R. at 357.) Furthermore, a review of

18

Dr. Diaz's records in Exhibits 6F and 11F (R. at 295-324, 353-375) shows a plethora of handwritten notes and minimal objective medical findings.  The notes mostly contain subjective reports of symptoms, lists of medications, and instructions regarding how to take the medications.

As plaintiff argues, "statements about the intensity and persistence of . . . symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence." SSR 96-7p, 1996 WL 374186 (July 2, 1996); 20 C.F.R. § 404.1529(c).  The ALJ is required to evaluate all the evidence in the record.  Id. The ALJ must also give "specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186, at *4.

In this case, the ALJ did not simply disregard the symptoms that plaintiff reported to Dr. Diaz and that Dr. Diaz noted in his records.  Rather, the ALJ gave specific reasons for his credibility determination that would be clear to any reviewer.  To wit, the ALJ noted Dr. Diaz's report that plaintiff "is never able to climb even stairs or ramps, balance, stoop, kneel, crouch, or crawl," since those activities cause fatigue and discomfort to his stomach with

19

shortness of breath.  (R. at 14.)  However, the ALJ also points to Dr. Diaz's report that plaintiff "is able to walk a block at a reasonable pace on rough or uneven surfaces, use standard public transportation, climb a few steps at a reasonable pace with the use of a single hand rail, prepare simple meals for himself, and sort, handle, or use paper files.  Id.  Accordingly, the ALJ's decision to discredit plaintiff's statements regarding his symptoms and Dr. Diaz's notes regarding the same is supported by substantial evidence.

**C.   Whether The ALJ Erred By Failing To Conclude That Plaintiff Has A Listed Impairment**

Plaintiff argues that the ALJ should have concluded that he meets Listing 4.04 for his ischemic heart disease.  Pl.'s Mem. 21-22.  Plaintiff asserts that he underwent a nuclear stress test which revealed the presence of ischemia, and that independent angiography showed the presence of one vessel with 90% blockage and five other vessels with 100% blockage.  Lastly, plaintiff claims that he suffers from chest pain and dyspnea on minimal exertion, and that he has "marked functional limitations," which enable him to meet Listing 4.04.

As discussed in section B, supra, plaintiff does not meet Listing 4.04.  His ischemia is a severe impairment, but it does not result in a very serious limitation of his ability to independently initiate, sustain, or complete activities of daily living.  As long as plaintiff remains able to prepare simple meals, use public

transportation, walk a block at a reasonable pace, or climb a few steps at a reasonable pace with the use of a hand rail, he cannot be considered "very seriously limited" in his activities of daily living, and is therefore not <u>per</u> <u>se</u> disabled.

### D. Whether The ALJ Erred By Failing To Give Proper Weight To The Findings And Conclusions Of Plaintiff's Treating And Examining Physicians

Plaintiff argues that the ALJ erred in failing to defer to the opinion of his treating physician, Dr. Diaz.  <u>See</u> <u>generally</u> Pl.'s Mem. 22-28.  Plaintiff presents several reasons why the ALJ should have credited Dr. Diaz's opinion over that of Dr. Gaeta, the non-examining ME:

1. Dr. Gaeta's "single, one-shot examination" cannot outweigh the findings, conclusions, and opinions of doctors who have examined and treated plaintiff regularly for several years;

2. Dr. Gaeta and Dr. Diaz have "identical" credentials, as they are both board-certified in internal medicine with a subspecialty in cardiovascular disease, and therefore Dr. Gaeta's opinion is not entitled to greater weight than Dr. Diaz's opinion.

3. There is no evidence to substantiate the ALJ's claim that Dr. Gaeta is "well versed in Social Security disability evaluation."

4. Although Section I-2-5-39(C) of the HALLEX regulations dictates that an ALJ may not ask an ME to determine a claimant's RFC, the ALJ did so in this case;

5. The ALJ erred in assigning "great weight" to the opinion of Dr. Gaeta, a non-examining ME, with respect to non-medical issues such as RFC while refusing to assign special weight to Dr. Diaz's opinion regarding plaintiff's RFC;

6.   The ALJ violated HALLEX regulations by failing to submit his proposed interrogatories to plaintiff, by failing to provide an opportunity for plaintiff to schedule a supplemental hearing, and by failing to send plaintiff a list of the medical records that were sent to the ME;

7.   Notwithstanding the ALJ's claim to the contrary, Dr. Diaz's office notes contain numerous medical findings;

8.   It was appropriate for Dr. Diaz to base his assessment on plaintiff's subjective symptoms;

9.   The ALJ improperly rejected Dr. Diaz's opinions on the basis that Dr. Diaz is not well versed in Social Security disability evaluation; and

10.   It was improper for the ALJ to assign "significant weight" to the conclusions of the DDS reviewers, since the opinions of a non-examining DDS doctor cannot outweigh the findings of a treating physician.

See generally, Pl.'s Mem. 22-28.  The court will address each of plaintiff's arguments in turn.

Generally, the opinion of a treating physician is entitled to controlling weight.  20 C.F.R. §§ 404.1527, 416.927.  However, if the treating physician's opinion is inconsistent with other substantial evidence in the record, such as the opinions of other medical experts, it is not entitled to controlling weight.  Stanton v. Astrue, 370 Fed. App'x. 231, 234 (2d Cir. 2010)(quoting Halloran v. Barnhart, 362 F.2d 28, 32 (2d Cir. 2004)).  The ALJ may consider several factors when evaluating how much weight to assign to a treating physician's opinion, including his or her specialization, the supportability of the opinion, and the length of treatment.  20

C.F.R. §§ 404.1527, 416.927.   In this case, some of Dr. Diaz's
objective medical evidence is problematic.   One of plaintiff's two
stress tests, for instance, was administered prior to plaintiff's
onset date of November 12, 2007.   Moreover, even the stress test
which revealed plaintiff's severe impairment of ischemia is
contradicted by plaintiff's subjective complaints and Dr. Diaz's
office notes; as discussed <u>supra</u>, both plaintiff and Dr. Diaz
reported that plaintiff was able to maintain activities of daily
living.   In other words, Dr. Diaz's opinion that plaintiff is
disabled is inconsistent with other substantial evidence in the
record and is therefore not entitled to controlling weight.   The
ALJ's decision not to credit Dr. Diaz's opinion is supported by
substantial evidence.

Plaintiff argues that there is no evidence in the record to
show that Dr. Gaeta is well versed in Social Security disability
evaluation.   However, plaintiff concedes that Dr. Diaz and Dr.
Gaeta have identical credentials (Pl.'s Mem. 24).   Since plaintiff
certainly believes that Dr. Diaz is well versed in Social Security
disability evaluation, his claim that the equally-credentialed Dr.
Gaeta is somehow less well-versed makes little sense.   Moreover,
the ALJ and the court both recognize that Dr. Gaeta and Dr. Diaz
have identical specializations and other credentials.   That fact,
however, is not at issue.   The issue is whether substantial medical
evidence supports Dr. Diaz's opinions, and the answer is that it

does not.

With respect to RFC, plaintiff's argument is misplaced.  There is no regulation which prohibits the ALJ from asking an ME how a given impairment affects the claimant's RFC.  The task of determining the claimant's RFC remains with the ALJ.  In this case, the ME simply offered his opinion regarding how plaintiff's coronary artery disease affects his capacity for work.  In no way did the ME usurp the ALJ's decisionmaking authority with respect to RFC.  Consequently, the ALJ's RFC determination is supported by substantial evidence.

Plaintiff argues that if interrogatories are submitted to a VE after the hearing, the ALJ must also submit them to the claimant and to his attorney so that they may review them, posit any objections, or pose additional questions.  Pl.'s Mem. 24-25. Plaintiff claims that he never received the proposed interrogatories and therefore did not have an opportunity to object or propose new questions.  Id.  However, the record shows that plaintiff's representative received a copy of Jubrey's interrogatories dated December 28, 2009.  (R. at 207-08.)  The issue is that plaintiff did not have an opportunity for a supplemental hearing so that he could cross-examine Jubrey or pose additional interrogatories to her.  Plaintiff shall have an opportunity to do precisely that on **REMAND**.  Indeed, on **REMAND**, the ALJ should ensure that plaintiff receives the interrogatories, a

list of medical evidence that was given to the experts, and any new evidence that may have been received since the hearing.  It is unnecessary to provide plaintiff with the experts' qualifications since that information is on file with the Agency.  See Def.'s Mem. 17.

Plaintiff's argument that the ALJ improperly rejected Dr. Diaz's opinion because of the "minimal medical findings" in his office notes is without merit.  As plaintiff asserts, Dr. Diaz's notes contain many descriptions of plaintiff's self-reported symptoms, and it is perfectly acceptable for Dr. Diaz to consider plaintiff's subjective complaints in making his diagnosis and arriving at his final opinion.  However, the ALJ is entitled to rely not only on what the record says, but also on what it does not say.  See Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir. 1983). Substantial evidence supports the ALJ's decision to take into account the fact that Dr. Diaz's office notes contain "minimal [objective] medical findings" -- particularly where plaintiff's subjective complaints are contradicted throughout the record.

Lastly, plaintiff incorrectly argues that "the opinions of a non-examining DDS doctor cannot outweigh the findings and conclusions of Dr. Diaz who has examined and treated Daniel Cyr for several years.  The report of a non-examining physician is not substantial evidence, and when it is contradicted by the reports of treating physicians, it cannot be the substantial evidence on which

a finding of non-disability must be based." Pl.'s Br. 27.  As
discussed <u>supra</u>, if the treating physician's opinion is
inconsistent with other substantial evidence in the record, such as
the opinions of other medical experts, it is not entitled to
controlling weight.  <u>Stanton v. Astrue</u>, 370 Fed. App'x. 231, 234
(2d Cir. 2010)(quoting <u>Halloran v. Barnhart</u>, 362 F.2d 28, 32 (2d
Cir. 2004)).  In this case, Dr. Diaz's opinion is contradicted by
substantial evidence in the record, which means that the opinion of
a non-examining DDS doctor can be entitled to controlling weight.
Moreover, it is irrelevant that neither of the DDS doctors is a
cardiologist.  There is no regulation that requires a non-examining
doctor to be a specialist or board-certified in the area of
medicine that governs the claimant's impairment.  As a result,
plaintiff's argument on this point is meritless.

>     **E.   Whether the ALJ Erred By Failing To Resolve The Conflict
>     Between The Testimony Of The Vocational Expert And The
>     Dictionary Of Occupational Titles**

Plaintiff argues that the ALJ failed to resolve the
aforementioned conflict between the VE's response to an
interrogatory and the DOT.  As plaintiff states, in the event of a
conflict, the Second Circuit requires an ALJ to explain its
decision to accept the VE's testimony.  In this case, the ALJ
explained that "[a]lthough the vocational expert's testimony is
inconsistent with the information contained in the *DOT* and its
companion publication, the *Selected Characteristics of Occupations*

*Defined in the Revised Dictionary of Occupational Titles (SCO)*, the vocational expert provided a reasonable explanation for the discrepancy . . . based on the vocational expert's professional knowledge and experience." (R. at 16.) This is also consistent with SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000), which requires that "[w]hen there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination about whether the claimant is disabled."

Plaintiff presents four objections to the way in which the ALJ attempted to satisfy these requirements. First, plaintiff argues that there is no way to know whether the VE's explanation is reasonable because her qualifications are missing from the record. Pl.'s Mem. 29-30. Second, the VE's answer does not reveal the methodology she used to arrive at her conclusion. Id. at 30. Third, plaintiff objects to the lack of specificity in the VE's answer. Id. Lastly, plaintiff argues that the ALJ improperly refused to arrange a supplemental hearing so that plaintiff could cross-examine the VE in order to resolve the conflict. Id. at 31.

As the Commissioner stated, the VE's qualifications are filed with the Agency. On **REMAND**, the Commissioner shall provide plaintiff with that information. Although the court is satisfied with the VE's response, it appears that the plaintiff is unhappy

with the specificity of the VE's responses.  Accordingly, and because HALLEX Section I-2-5-30 gives plaintiff "the right to request a supplemental hearing," plaintiff shall have the opportunity on **REMAND** to arrange a supplemental hearing and pose additional questions to the VE in order to resolve the conflict.

## IV.  Conclusion

It is not clear whether plaintiff is entitled to disability benefits, but it is clear that this case must be remanded so that his claim can be determined anew once the record is fully developed.  Accordingly, the magistrate judge recommends that the plaintiff's motion to reverse the Commissioner's decision and remand the matter for a new hearing consistent with this opinion (dkt. #15) be **GRANTED.**  The Commissioner's motion to affirm (dkt. #18) should be **DENIED.**  Either party may timely seek review of this opinion and recommendation in accordance with Rule 72(b) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 72 (b).  Failure to do so may bar further review.  28 U.S.C. § 636(b)(1) (written objections to ruling must be filed within fourteen days after service of same); Small v. Sec'y of Health & Human Services, 892 F.2d 15, 16 (2d Cir. 1989).

**IT IS SO ORDERED.**

**Dated at Hartford, Connecticut, this 19th day of August, 2011.**

**/s/ Thomas P. Smith**
**Thomas P. Smith**
**United States Magistrate Judge**

28